**SIGNED this 5th day of March, 2013**

_Shelley D. Rucker_

Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

In re:

STEVEN McKENZIE

No. 08-16378

a/k/a Toby McKenzie

Chapter 7

    Debtor;

NELSON E. BOWERS, II,

    Plaintiff,

v

Adversary Proceeding
No. 11-1169

RICHARD L. BANKS, ANDREW B. MORGAN,
RICHARD BANKS & ASSOC., P.C.,
And STEVE ALLEN McKENZIE

    Defendants.

1

## MEMORANDUM

The plaintiff Nelson E. Bowers, II ("Bowers") has filed a motion for default judgment against the debtor, Steven Allen McKenzie ("Debtor") as part of a pleading entitled "Supplement to Motion to Strike or Dismiss 'Toby McKenzie's Response to Nelson Bowers' Lawsuit' and Motion for Default Judgment and to Cancel or Reschedule Show Cause Hearing." [Doc. No. 123].[1]  The clerk of this court entered a default against the Debtor and set a hearing for the motion for February 1, 2013. [Doc. No. 133].

This court held a hearing on Bowers' motion on February 1, 2013. John Konvalinka, counsel for Bowers, appeared with Bowers, Mr. Vince Dooley and Mr. Jeffrey S. Norwood, who were present to testify. No one appeared on behalf of the Debtor or Richard L. Banks, Andrew B. Morgan, Richard Banks & Assoc., P.C. (the latter three parties are collectively the "Banks Defendants"). Mr. Konvalinka tendered the declarations of the three witnesses as support for Bowers' motion for default judgment. The court admitted the declarations. In addition, Bowers testified regarding whether the Debtor was in the Armed Forces. The court requested additional briefing on the issue of entry of a default judgment against an incompetent person and took the matter under advisement. Following the hearing on the motion, Bowers filed a memorandum in support of his motion for default. [Doc. No. 140].

The court has reviewed the briefing filed by Bowers, the declarations, the entire record in this proceeding and the applicable law, and issues the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

---

1 All docket references refer to entries in adversary proceeding no. 1:11-ap-1169 unless otherwise noted.

2

## I.      Background

Bowers filed this adversary proceeding on December 15, 2011 against multiple parties, including the Debtor, the Banks Defendants, F. Scott LeRoy d/b/a LeRoy & Bickerstaff, F. Scott LeRoy, LeRoy & Bickerstaff PLLC, LeRoy, Hurst & Bickerstaff, PLLC, and C. Kenneth Still (the "Trustee") (collectively "Defendants"). [Doc. No. 1, Complaint]. In the Complaint Bowers alleged that the Defendants initiated and prosecuted two different lawsuits against him without probable cause and for improper purposes. The first suit was one that the Debtor and the Trustee filed in the Chancery Court of Bradley County, Tennessee, Case No. 2010-cv-251, on August 6, 2011 ("Bradley County Lawsuit") against a number of defendants, including Bowers, Exit 20 Auto Mall, LLC, John Anderson, and Grant Konvalinka & Harrison, P.C. ("GKH"). The second suit was an adversary proceeding that only the Trustee filed, Adversary Proceeding No. 10-1407, in the U.S. Bankruptcy Court for the Eastern District of Tennessee ("Bankruptcy Proceeding") against Bowers, Exit 20 Auto Mall, LLC, John Anderson, GKH, and CapitalMark Bank & Trust. The Debtor was a plaintiff only in the Bradley County Lawsuit.

### A.      Procedural Background of Bradley County Lawsuit and Bankruptcy Proceeding

The Bradley County Lawsuit alleged three counts against Bowers. The Debtor and the Trustee brought claims for (1) breach of fiduciary duty/conflict of interest, (2) assisting a fiduciary on committing a breach of duty, and (3) civil conspiracy. *See* [Doc. No. 1-2, Ex. 2].[2] The other lawsuit, the Bankruptcy Proceeding, alleged five counts against Bowers and the other defendants. They were (1) violation of the automatic stay, (2) avoidance of preferences, (3) avoidance of fraudulent transfers, (4) equitable subordination, and (5) claims against insiders. [Adv. Proc. No.

---

2  The claims for breach of fiduciary duty/conflict of interest and for civil conspiracy were also brought against GKH, John Anderson and Exit 20 Auto Mall, LLC, a limited liability company controlled by Bowers.

10-1407, Doc. No. 1]. The operative facts in both lawsuits involved the conduct of the defendants in the course of a real estate transaction in December of 2008. The transaction occurred after an involuntary bankruptcy was filed against the Debtor, and it involved the transfer of a tract of land located in Bradley County, Tennessee from a limited liability company in which the Debtor shared equal ownership with Bowers to a limited liability company in which the Debtor had no interest, but Bowers did.[3]

The defendants moved to dismiss the Bankruptcy Proceeding on October 8, 2010, October 22, 2010, and October 27, 2010, and the bankruptcy court granted the motions on December 16, 2010 by issuing an order following an oral opinion. [Adv. Proc. No. 10-1407, Doc. Nos. 28, 37, 40, 67; Doc. No. 1-10 (Transcript of Oral Hearing)].The most significant aspect of the ruling dismissing the Bankruptcy Proceeding was that the court found that the real property that was the subject of the allegedly avoidable December 2008 transfer was determined not to be property belonging to the Debtor or his bankruptcy estate. Having found that no property of the Debtor or the estate was transferred, the bankruptcy court dismissed all of the causes of action.

On November 5, 2010 Bowers and defendant Exit 20 Auto Mall, LLC moved to dismiss the Bradley County Lawsuit. [Doc. Nos. 1-6, 1-7]. In the memorandum filed in support of the motion to dismiss, Bowers argued that the first count, the claim of breach of fiduciary duty/conflict of interest, should be dismissed on the grounds that the claim failed to satisfy the pleading

---

3 The litigation which can trace its genesis to this transaction includes the Bankruptcy Proceeding and the Bradley County Lawsuit. The prosecution of those lawsuits led to this proceeding and several other related cases: *Grant, Konvalinka & Harrison, P.C. v. Banks et al.*, Adv. Proc. No. 1016 (malicious prosecution action brought by GKH arising out of filing of Bankruptcy Proceeding), *Grant, Konvalinka & Harrison, P.C. v Banks et al.*, Adv. Proc. No. 11-1118 (malicious prosecution action brought by GKH filed in bankruptcy court arising out of filing of the Bradley County Lawsuit); *Grant, Konvalinka & Harrison, P.C. v. Still*, Adv. Proc. No. 11-1121 (malicious prosecution action brought by GKH initially filed in Hamilton County, Tennessee Circuit Court which was removed to bankruptcy court arising out of Bradley County Lawsuit); *Anderson v. Banks et al.*, Adv. Proc. No. 11-1170 (malicious prosecution action brought by John Anderson arising out of filing of Bankruptcy Proceeding and Bradley County Lawsuit.)

standards under Tennessee law, that it was barred by the statute of limitations, and that Bowers did

not owe a fiduciary duty to the Debtor. [Doc. No. 1-7, pp. 5-8]. With respect to the second count,

the claim of assisting the breach of fiduciary duty, Bowers argued that the claim also failed to

satisfy the pleading standards of Tennessee law and that it was barred by the statute of limitations.

*Id.* at pp. 9-11. As to the third claim, civil conspiracy, he argued that the Debtor's and Trustee's

claim of conspiracy against him should be dismissed because it was not pled with the requisite

degree of specificity, it failed to state a claim, and finally, that it failed to satisfy the "predicate

tort" requirement. *Id.* at pp. 11-14. Bowers also argued that the Debtor failed to allege a fraudulent

transfer of property belonging to him, fraudulent misrepresentation, or fraudulent concealment in

support of the conspiracy claim. *Id.* at pp. 14-17.

Following the bankruptcy court's decision granting the motions to dismiss the Bankruptcy

Proceeding, Anderson and GKH provided a copy of the bankruptcy court decision in the

Bankruptcy Proceeding to the state court chancellor in the Bradley County Lawsuit. They

informed the chancery court that they were joining in Bowers' and Exit 20, LLC's motion to

dismiss. [Doc. No. 1-11]. The Debtor and the Trustee then submitted a memorandum opposing

Bowers', Anderson's and GKH's motions to dismiss. [Doc. No. 1-12]. In their response, they

argued, among other things, that the statute of limitations was tolled. On January 26, 2011 the

chancellor issued an order granting the motions to dismiss. [Doc. No. 1-18 ("January 26 Order")].

The order states in full:

> This cause came to be heard on the 14th day of December, 2010, upon the
> Defendants' Motion to Dismiss aspects of the Plaintiffs' Complaint based on
> breach of fiduciary duty and conflict of interest. Plaintiffs, in response to the
> Motion to Dismiss, filed an Affidavit and a Memorandum of Authority after which
> the Defendants likewise filed a Memorandum of Authority. When a Rule 12
> Motion is argued and proof is taken, such proof in this case being an Affidavit, this
> changes the Motion for a 12.06 Motion to Dismiss to a Motion for Summary

> Judgment. However, the Affidavit in this case is not sufficient to raise the issue of tolling of the Statute of Limitations under the case law in Tennessee. Therefore, the Complaint of Plaintiffs that alleges breach of fiduciary duty and conflict of interest arising out of signing of a deed on December, 2008 are hereby dismissed because these two causes of action have a one year Statute of Limitations.

*Id.* Following issuance of its order, the chancery court held a hearing on February 22, 2011 at which Bowers' attorney raised an issue "as to whether or not that was a full and final dismissal as to all defendants as to all counts." [Doc. No. 1-20, p. 3]. The parties then informed the chancellor of their agreement to "submit an order which clarifies Your Honor's order which would state that that order is final as to all defendants and it's to all counts, but the finality of that order would not go from the January 26, 2011 date. It would go from the date of entry of this amended revised order for purposes of appeal." *Id.* After the hearing the court entered the following agreed order. That order in relevant part stated:

> Upon agreement between Plaintiffs and Defendants, as evidenced by the signatures of their counsel below, and with the Court having been advised by announcement in open court by Plaintiff's counsel on February 22, 2011 (attached hereto), the Plaintiffs and Defendants have agreed to the following:
> That the Court's order entered on January 26, 2011, is modified so that the dismissal is as to all defendants and as to all counts in the complaint; and
> That the time period as to the finality of the Order of Dismissal would not start on the January 26, 2011 date but would begin on the date of entry of this Order; and
> That Plaintiff's Motion for Joinder of Indispensible Plaintiff, dated January 5, 2011, is hereby WITHDRAWN WITHOUT PREJUDICE; and
> That John Anderson and Grant, Konvalinka & Harrison, P.C.'s Motion to Compel Plaintiffs to Respond to Interrogatories/Requests for Production, dated January 6, 2011, is hereby WITHDRAWN AS MOOT; and
> That Plaintiffs are responsible for any and all court costs, for which execution may issue, if necessary; and
> That Plaintiffs shall have thirty (30) days from entry of this Agreed Order to file a notice of appeal.

[Doc. No. 1-21].

### B.    Procedural Background of This Adversary Proceeding

With respect to this adversary proceeding, the record indicates that Bowers served the

6

Debtor with a copy of the summons and Complaint on December 20, 2011. [Doc. No. 29]. Federal

Rule of Bankruptcy Procedure 7012 requires that a defendant must answer a complaint within 30

days after issuance of the summons. Fed. R. Bankr. P. 7012. The other defendants in this

proceeding answered the complaint, filed timely extensions of time to answer, or moved to dismiss

the adversary proceeding. *See* [Doc. Nos. 30, 31, 32].[4]

Bowers previously filed a motion for default judgment on January 24, 2012 against the

Debtor. [Doc. No. 35]. The clerk of the court entered a default on January 25, 2012. [Doc. No. 36].

The court held a hearing on the motion for default judgment on March 1, 2012. [Doc. No. 48].

Prior to the first default judgment hearing, on February 15, 2012, the Debtor filed a response to

Bowers' motion for default judgment. [Doc. No. 42]. The court denied the motion for default

judgment based on the Debtor's response and the existence of a number of other defendants who

were still in the case who had filed objections to Bowers' motion for a default judgment. [Doc. No.

48].

On November 1, 2012, Bowers moved to strike and/or dismiss the Debtor's response.

[Doc. No. 116]. On December 7, 2012, Bowers supplemented his motion to strike and added a

motion for default judgment. [Doc. No. 123]. The court set the motion to strike for hearing and

deferred ruling on the motion for default judgment. [Doc. No. 124].

Prior to the filing of the Motion to Strike, a conservator had been appointed for the Debtor.

The Debtor's prior counsel, Richard Banks, filed a notice of conservatorship in the main

bankruptcy case. [Bankr. Case No. 08-16378, Doc. No. 1739, Filed July 19, 2012 by Richard L.

Banks on behalf of Debtor]. The order appointing conservator attached to the notice of

---

4  This court previously dismissed F. Scott LeRoy d/b/a LeRoy & Bickerstaff, F. Scott LeRoy,
LeRoy & Bickerstaff PLLC, LeRoy, Hurst & Bickerstaff, PLLC, and C. Kenneth Still. [Doc. Nos.
60, 61].

conservatorship states that "the [Debtor] is a disabled person; owns property requiring

supervision; and should have a conservator appointed." [Bankr. Case No. 08-16378, Doc. No.

1739-1]. The conservator is the Debtor's wife who is not an attorney. She participated in

scheduling conferences in this proceeding, and on October 24, 2012 she filed a document entitled,

"Toby McKenzie's Statement Confirming Consent to this Court Entering a Final Order and to this

Court Conducting Jury Trial in this Matter (Copied From What Andy Pippenger Filed)." [Doc. No.

115]. In this filing the Debtor's conservator indicated that the Debtor consented to this court

entering final orders or a judgment and further consented to this court conducting a jury trial. *Id.*

She specifically indicated that she requested a "Bradley County jury." *Id.*

On December14, 2012, the court set a show cause hearing for the conservator to appear and

show cause why she should not be required to retain counsel to represent her. [Doc. No. 126]. This

hearing was set with Bowers' Motion to Strike. Both the conservator and the Debtor appeared at

the show cause hearing which was held on January 8, 2013 in connection with Bowers' motion to

strike or dismiss the response. She offered no authority that would allow her to proceed *pro se,* and

she represented to the court that both she and the Debtor were without financial resources to retain

counsel. The Debtor attended the hearing in a wheelchair. He has waived his discharge in response

to a complaint objecting to his discharge filed by the Trustee pursuant to 11 U.S.C. § 727(a)(2)(A)

and (B) (fraudulent transfers); (a)(3) (failure to keep records); (a)(4)(A) (failure to disclose assets);

and (a)(4)(C) and (D) (attempting to obtain money for acting or forebearing from acting in

connection with the case). [Adv. Proc. 10-1456, Doc. No. 1, Complaint, *Still v. McKenzie*];

[Bankr. Case No. 08-16378, Doc. No. 1037, Waiver of Discharge]. The claims filed in this case

exceed $100,000,000. Claims Register, Case No. 08-16378. The court has been provided with no

evidence that the Debtor's financial condition is anything other than what was represented by the

8

conservator.

At the show cause hearing, the court held that the conservator could not proceed *pro se* in her representative capacity, and the court struck the Debtor's response as being non-responsive. [Doc. No. 131]. At the same hearing, the court set a hearing on the Motion for Default Judgment for February 1, 2013, and reminded the conservator that she would need to obtain counsel if she intended to oppose the default judgment. The Debtor and his conservator failed to respond in writing to the motion for the default or to appear at the default judgment hearing. There is no evidence before the court that the conservator has obtained counsel to represent the conservator or Debtor's interests in this proceeding.

## II.    Jurisdiction

Bowers has appealed this court's jurisdiction over this matter in a prior, related adversary proceeding. *See* [Doc. No. 1, Complaint, ¶ 6, n.1]. In addition, the Bowers' Complaint requests a jury trial. However, during the hearing on the motion for default judgment, counsel for Bowers consented to this court determining damages for Bowers based on the Debtor's default and waived his request for a jury trial. The conservator was not at the default judgment hearing and so there was no opposition to the waiver of the jury trial.

## III.    Analysis

Federal Rule of Bankruptcy Procedure 7055 incorporates Federal Rule of Civil Procedure 55 into the rules governing adversary proceedings. Fed. R. Bankr. P. 7055, Fed. R. Civ. P. 55. Federal Rule of Civil Procedure 55 provides a procedure for the court to enter a default judgment when a party has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a)-(b).

Federal Rule of Civil Procedure 55(b) states in relevant part:

In all other cases, the party must apply to the court for a default judgment. A default

9

judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2).

### A.     Procedural Requirements for Default Judgment

In *HICA Education Loan Corp. v. Klugewicz*, the court reviewed the "procedural requirements" necessary for the entry of a default judgment:

> Finally, there are also several procedural requirements which a plaintiff must satisfy before default judgment can be entered in the plaintiff's favor. First, the plaintiff must properly serve the defendant with process.
>
> Second, "the plaintiff must fulfill the procedural obligations of Fed.R.Civ.P. 55. Specifically, the plaintiff must first seek entry of default by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint." "Once the clerk has entered a default, the moving party may then seek entry of a default judgment."
>
> Third, if the defendant has entered an appearance, then the defendant must be served with notice at least seven days before the hearing. Fed.R.Civ.P. 55(b)(2). Fourth, "the plaintiff must submit an affidavit stating that the defendant is not an infant or incompetent person."
>
> Fifth, and finally,
>
>> the plaintiff must submit an affidavit stating whether the defendant is in military service, or if plaintiff is unable to determine whether the defendant is in military service, stating so. Servicemembers Civil Relief Act ("SCRA") § 201(b), 50 U.S.C. app. § 521(b)(1). The SCRA affidavit is a prerequisite to the entry of a default judgment. The affidavit must include more than a "bare assertion" based "upon information and belief," but must set forth specific facts establishing the plaintiff's efforts to determine whether the

defendant is in military service.

No. 1:11-cv-287, 2012 WL 6799752, at *3-4 (E.D. Tenn. Apr. 17, 2012) (quoting *Broadcast Music v. Marler*, No. 1:09-cv-193, 2009 WL 3785878, at *4 (E.D. Tenn. Nov. 12, 2009)) (other citations omitted).

In this proceeding Bowers has demonstrated that he served the Debtor with notice of the Complaint. [Doc. No. 20]. Thus, the first requirement of Fed.R.Civ.P. 55 has been satisfied. The second requirement, explained by the court in *Klugewicz*, has also been satisfied. The Debtor filed a response to the Complaint, which this court has since stricken. [Doc. Nos. 42, 131]. Thus, there is no answer that has been filed on the Debtor's behalf. Further, the clerk has entered a default. [Doc. No. 133].

The third requirement is also satisfied because the Debtor received more than seven days' notice of this hearing. *See* [Doc. No. 133]. During the hearing on default judgment, the court also heard testimony regarding the Debtor's lack of military service sufficient to satisfy the requirements of the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521(b)(1), although the section only applies where the defendant has failed to make an appearance. 50 App. U.S.C.A. §521(a). Nevertheless, the court required testimony at the hearing on this issue to remove any question about whether the Debtor had appeared since the court had stricken the only pleading filed by the Debtor prior to the appointment of the conservator.

With respect to the fourth requirement regarding the competency of the Debtor, Rule 55 states that "[a] default judgment may be entered against a minor or incompetent person only if represented by a . . . conservator, or other like fiduciary who has appeared. . . ." Fed.R.Civ.P. 55(b)(2). It appears from the cases cited by Bowers that an appearance by a conservator can simply mean appearing and participating in a hearing. *See Wells v. Rhodes*, 2:11-cr-217, 2012 WL

2130980, at *3 (S.D. Ohio June 8, 2012) (finding that defendant minor's mother was properly

served and defendant's father appeared and participated in hearing on behalf of the minor). In *New

York Life Ins. Co. v. Brown*, the Fifth Circuit explained what an "appearance" under the Federal

Rules of Civil Procedure requires:

> An appearance "involves some presentation or submission to the court." What
> constitutes an appearance is not "confined to physical appearances in court or the
> actual filing of a document in the record." Appearances "include a variety of
> informal acts on defendant's part which are responsive to plaintiff's formal action
> in court, and which may be regarded as sufficient to give plaintiff a clear indication
> of defendant's intention to contest the claim." In summary, an appearance is an
> indication "in some way [of] an intent to pursue a defense." This is "a relatively low
> threshold."

84 F.3d 137, 141-42 (5th Cir. 1996) (citing 10 WRIGHT AND MILLER, FEDERAL PRACTICE

AND PROCEDURE § 2686 (2d ed. 1987)); *Sun Bank of Ocala v. Pelican Homestead and Savings

Assoc.*, 874 F.2d 274, 276 (5th Cir. 1989); *United States v. McCoy*, 954 F.2d 1000, 1003 (5th Cir.

1992)).

The Debtor's conservator, Rebecca McKenzie, appeared and spoke on the Debtor's behalf

at the scheduling conferences and at the show cause hearing held on January 8, 2013. She also filed

a statement regarding the Debtor's consent to have this court enter final orders and to hold a jury

trial. [Doc. No. 114; Doc. No. 115]. Therefore, the court concludes that the Debtor's conservator

has appeared on his behalf in this adversary. The fact that the court has stricken the pleading filed

by the conservator is not determinative of whether an appearance has occurred.

The appearance of the representative prerequisite to granting a default judgment in Rule 55

is to ensure that notice is provided to the appropriate party in cases in which the debtor is not

competent to respond.   In this case, the court has no question but that the representative of the

Debtor has appeared in the case and was aware of the upcoming hearing on the motion for default

judgment. The court in its order setting the show cause hearing explained to Mrs. McKenzie the issue regarding her ability to proceed *pro se* in a representative capacity. When a conservator or guardian ad litem is not an attorney, the conservator or guardian ad litem must hire an attorney. In *Kollsman, a Div. of Sequa Corp. v. Cohen*, the Fourth Circuit explained that "[t]he guardian *ad litem's* presence is necessitated by the litigation and it is his duty to determine policy regarding litigation. The guardian *ad litem* is frequently not an attorney and if legal services are required, he must seek and employ counsel." 996 F.2d 702, 706 (4th Cir. 1993). The court set a show cause hearing prior to striking the pleadings to give Mrs. McKenzie opportunity to show cause why she should not be required to hire counsel. Mrs. McKenzie appeared with the Debtor at the show cause hearing and offered no legal basis on which the court could allow her to proceed in her representative capacity without counsel. The court confirmed at the show cause hearing that the Debtor and Mrs. McKenzie were aware of the need to obtain counsel to respond to the motion for default judgment, and the court then set this motion for default judgment for hearing three weeks later and announced for their benefit the date and time of the hearing on the default judgment at the show cause hearing. As noted above, neither the Debtor nor his conservator appeared at the hearing on the motion for default judgment. The court finds that all of the procedural requirements for entry of a default judgment have been met.

### B.      Assessment of the Merits of Plaintiff's Complaint

This court has discretion regarding the granting of a motion for default judgment. *See Klugewicz*, 2012 WL 6799752, at *1; *Jahn v. Clayton*, 2012 WL 112940, at *1 (Bankr. E.D. Tenn. Jan. 12, 2012). Because of the unusual situation of the Debtor's incapacity in this proceeding and the court's decisions in other adversary proceedings raising malicious prosecution based on the Bankruptcy Proceeding and the Bradley County Lawsuit, the court will review the merits of the

13

Complaint. In *In re Irby* the bankruptcy court explained the court's obligation in this way:

> It is fundamental that not all injuries are legally compensable; a tenet which may not be bypassed simply because a party fails to respond to a complaint. Thus, among the considerations a court is to employ when determining the propriety of entering a judgment by default is whether there exists a sufficient basis in the pleading for the judgment's entry; or similarly, whether a viable cause of action is alleged.

337 B.R. 293, 294 (Bankr. N.D. Ohio 2005) (citations omitted). In addressing the merits of the complaint, the factual allegations are admitted.

> Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.

10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688, p. 63 (3d. 1998).

### 1.    Elements of Malicious Prosecution

In this proceeding Bowers has brought a claim for malicious prosecution and one for abuse of process. *See* Complaint. The court will examine whether there is a sufficient basis in the Complaint for a judgment. As to malicious prosecution first, the judicial proceeding must have been "instituted by the defendant." *Wright Medical Technology, Inc. v. Grisoni*, 135 S.W.3d 561, 581 (Tenn. Ct. App. 2001) (citing *Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 247-48 (Tenn. Sup. Ct. 1992)). Further, under Tennessee law a claim for malicious prosecution requires three additional elements: "(a) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in the plaintiff's favor." *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. Sup. Ct. 2005) (overruled

14

in part by *Himmelfarb v. Allain*, 280 S.W.3d 35 (Tenn. Sup. Ct. 2012)). A plaintiff bears a heavy

burden of proof to establish the elements of lack of probable cause and malice. *Buda v. Cassel*

*Bros., Inc.*, 568 S.W.2d 628, 631 (Tenn. Ct. App. 1978).

### a.    Malicious Prosecution of the Bankruptcy Proceeding

With respect to the Bankruptcy Proceeding, one of the elements is missing because the

Debtor did not institute the Bankruptcy Proceeding. He was not a party. While the court recognizes

that the holding in the Bankruptcy Proceeding regarding property of the estate is related to the

issue of civil conspiracy to commit a fraudulent transfer, the court does not find that Bowers has

alleged that the Debtor instituted the Bankruptcy Proceeding against Bowers at all. Complaint ¶12,

13. It is possible that a non-party may institute a criminal prosecution against a malicious

prosecution plaintiff. Such cases often arise in the context of an employer bringing charges against

an employee for theft or a business bringing charges against a customer for issuing a bad check.

*See e.g., Hibbard v. Receivables Mgmt. Bureau, Inc.*, No. E2007-00152-COA-R3-CV, 2007 WL

4117268 (Tenn. Ct. App. Nov. 20, 2007) (collection agency attempting to file charges against

customer for issuing bad check); *Roberts v. Federal Express Corp.*, No. 02A01-9502-CV-00019,

1996 WL 114489 (Tenn. Ct. App. Sept. 3, 1996) (employer filing charges against employee for

theft). Here, there is no allegation that the Debtor was personally responsible for instituting the

Bankruptcy Proceeding against Bowers. Therefore, Bowers has not stated a cause of action against

the Debtor for malicious prosecution related to the Bankruptcy Proceeding.

### b.    Malicious Prosecution of the Bradley County Lawsuit

The Debtor satisfies the requirement of being the party who instituted the lawsuit with

respect to the Bradley County Lawsuit. Complaint ¶ 14. He was a plaintiff who sought recovery for

himself. He brought three claims against Bowers in the Bradley County Lawsuit. They were

15

breach of fiduciary duty/conflict of interest, assisting a fiduciary on committing a breach of duty, and civil conspiracy. *Id.* Paragraph 14 of the malicious prosecution Complaint recites only the first count contained in paragraphs 28-35 and the third count contained in paragraphs 43-51 of the Bradley County Lawsuit complaint. However, a comparison of the Bradley County Lawsuit complaint to the Complaint in this proceeding clearly indicates that the second count was alleged against Bowers. *See* [Doc. No. 1-2].

> **i.      No Favorable Termination of the Counts of Breach of Fiduciary Duty/Conflict of Interest and Assisting a Fiduciary with a Breach of Duty**

With respect to the three additional elements needed to state a claim for malicious prosecution, Bowers has failed to show that he has received a final and favorable termination of two of the claims against him. Although Bowers asserts that the dismissal of the Bradley County Lawsuit was a "final and favorable termination of that action" in his favor, he also admits that "Chancellor Bryant also dismissed certain claims in the [Bradley County Lawsuit] based upon the expiration of the applicable statute of limitations." *Id.* at ¶¶ 41, 47. The court finds that those "certain claims" were Debtor's pursuit of the count of breach of fiduciary duty/conflict of interest and the count of assisting a fiduciary to breach a duty. The court reaches this conclusion based on the records attached to the Complaint.

Bowers filed a motion to dismiss the Bradley County Lawsuit. The Chancellor treated the Motion to Dismiss as a motion for summary judgment. She stated that [the aspects of] "the Complaint of Plaintiffs that alleges breach of fiduciary duty and conflict of interest arising out of signing of a deed on December, 2008 are hereby dismissed because these two causes of action have a one year Statute of Limitations." [Doc. No. 1-18, Complaint ¶ 28 (quoting the January 26 Order)]. This court interprets the order as addressing the first two counts because both involved

16

issues relating to fiduciary duties. The defense of statute of limitations was raised to both counts

one and two. Debtor's counsel thought that the January 26 Order resolved two claims and Bowers

refers to "claims" in the plural in his Complaint. The court finds that the two counts involving

fiduciary duties were dismissed based on the statute of limitations. Complaint ¶ 28. Such a ruling

does not "reflect on the merits of an action." *Parrish*, 172 S.W.3d at 531. As such, the essential

element of favorable termination as to counts one and two has not been met. *Id.* at 533.

### ii.   Issue of Favorable Termination Remains for Count Three of Civil Conspiracy

With respect to the third count of civil conspiracy the issue of favorable termination is less

clear. The January 26 Order does not address the count of civil conspiracy specifically, although

even that count involved "the signing of a deed on December 2008." This count was dismissed

pursuant to an agreed order which clarified that the dismissal contained in the January 26 Order

was as to all defendants and all counts. "In determining whether a specific result was a favorable

termination, a court must examine the circumstances of the underlying proceeding." *Parrish*, 172

S.W.3d at 531 (citing *Siliski v. Allstate Ins. Co.*, 811 A.2d 148, 151-152 (Vt. Sup. Ct. 2002) and

Restatement (Second) of Torts, § 674, cmt. j (1977)).

> . . . [I]f the manner of termination, including dismissal, reflects negatively on the
> merits of the case, it will be considered favorable to the defendant…. More
> specifically, if the dismissal somehow indicates that the defendant is innocent of
> wrongdoing, it will be considered a favorable termination…. On the other hand, if
> the reason for the dismissal is "not inconsistent" with a defendant's wrongdoing, it
> will not be considered a favorable termination…. If the circumstances surrounding
> the dismissal are ambiguous on this point, the determination should be left for trial.

*Parrish*, 172 S.W.3d at 531 (quoting *Siliski*, 811 A.2d at 151-52 (citations omitted)).

The parties to the Bradley County Lawsuit had questions about the breadth of the January

26 Order, which was a dismissal with prejudice of claims relating to breaches of fiduciary duty and

conflict of interest. The bankruptcy court had ruled in December that the real estate transferred was

not property of the Debtor, nor was it property of the estate. The court had dismissed all of the

avoidance actions alleged in the Bankruptcy Proceeding complaint. Bowers and GKH reset the

motion to dismiss for hearing on February 22, 2011, when the Debtor and the Trustee refused to

dismiss any remaining claims after the bankruptcy court ruling on the issue of property of the

estate. Complaint ¶ 29. Before any issues were argued at the hearing on the reset motion on

February 22, 2011, the attorney for the Trustee and the Debtor announced that "The Court ruled, I

think, in the order entered January 26th as to a dismissal of two causes of action, and there's an

issue raised by [Bowers' counsel] as to whether or not that was a full and final dismissal as to all

defendants as to all counts." He added that, "We have agreed, subject to Your Honor's approval to

submit an order which clarifies Your Honor's order which would state that the [January 26] order

is final as to all defendants and it's to all counts." Complaint ¶ 30; [Doc. No. 1-20, Transcript,

February 22, 2011]. The text of the order that was submitted is quoted in full in Section I, *supra*.

Bowers has alleged that the "circumstances leading to the dismissal of the [Bradley County

Lawsuit] demonstrate that the dismissal of that cause of action was based on its lack of merit and

was a final and favorable termination of that action." Complaint ¶ 47. Those circumstances were

that the bankruptcy court had ruled that the real estate transferred was not the Debtor's nor the

estate's property. The timing of the dismissal occurred immediately prior to the hearing when the

remaining issue involving the existence of a fraudulent transfer of the Debtor's property was set to

be heard. Complaint ¶ 56. Although the order was an "agreed" order, Bowers has alleged that the

Debtor's and Trustee's "abandonment and/or termination of the above-described [Bradley County

Lawsuit] claims in favor of Bowers and the other defendants were not accompanied by a

compromise or a settlement, or accomplished in order to refile the action in another forum."

Complaint ¶ 55. The order also assesses costs against the plaintiffs. It is not in the form of a

voluntary dismissal under Tennessee Rule of Civil Procedure 41.

Taking these uncontested allegations as admissions and reviewing the surrounding circumstances of the entry of the agreed order, the court finds that Bowers did obtain a favorable determination on the merits of the third count filed against him by the Debtor.

Recent case law in Tennessee sets a high standard for a court to find a favorable termination where there is no order expressly stating a ruling on the merits. In *Himmelfarb v. Allain* the Tennessee Supreme Court recently addressed whether a voluntary nonsuit qualifies as a favorable termination for purposes of a malicious prosecution claim. 380 S.W.3d 35 (Tenn. Sup. Ct. 2012). The court held that "a voluntary nonsuit without prejudice is not a favorable termination for purposes of a malicious prosecution claim. Our holding is consistent with the language of Tennessee's voluntary nonsuit rule and our prior case law." *Id.* at 40. The court then explored Tennessee Rule of Civil Procedure 41, under which "a voluntary dismissal is an adjudication on the merits of a case only if the order states that it is an adjudication on the merits, or if the plaintiff has twice previously voluntarily dismissed actions based on or including the same claim." *Id.* The court explained the policy reasons behind its decision as well:

> In addition to the language of Tennessee Rule of Civil Procedure 41 and our prior case law, there are sound policy reasons supporting our conclusion that a voluntary nonsuit without prejudice is not a favorable termination. Malicious prosecution actions have the potential to create a chilling effect on the right to access the courts. The threat of a malicious prosecution action may reduce the public's willingness to resort to the court system for settlement of disputes. We decline to adopt a rule that would deter litigants with potentially valid claims from filing those claims because they are fearful of a subsequent malicious prosecution action. Nor do we wish to deter parties from dismissing their claims when a dismissal is the appropriate course of action.

*Id.* at 41.

In light of the policy stated in *Himmelfarb*, the court reaches this decision after careful

deliberation. The court recognizes that this is a close case in light of that policy and the heavy burden of proof imposed on plaintiffs in malicious prosecution cases. The other defendants in this proceeding have responded and denied the allegations regarding the malicious prosecution case. The Debtor, who was the only defendant who was actually a participant in the transaction in December of 2008, has not responded. There being no response, Bowers is entitled to have the court treat his allegations as they relate to the Debtor's knowledge and his intentions as admissions by the Debtor of the factual allegations. In light of the Debtor's failure to respond, the existence of defenses other than a statute of limitations defense to the dismissal of the count of civil conspiracy, and the timing of the dismissal, the court concludes that under the circumstances of this case, Bowers has shown that he received a favorable termination as to this count.

      **iii.**      **Remaining Elements of Malicious Prosecution**

With respect to the remaining elements of malicious prosecution with respect to the count of civil conspiracy to commit a fraudulent transfer or to violate the automatic stay, Bowers has alleged that the Debtor did not have probable cause to make a claim that the Debtor's property had been transferred. Bowers alleged that the property transferred belonged to a limited liability company, rather than the Debtor, and this was found to be the case by the bankruptcy court. The Debtor has not challenged this allegation. With respect to malice, Bowers alleges that the Bradley County complaint was brought by the Debtor "to extort settlement proceeds from Bowers in hopes that Bowers would pay to avoid the expense and publicity of litigation." Complaint ¶ 43. Therefore, the court finds that the remaining elements of a malicious prosecution claim have been pled.

      **2.**      **Abuse of Process**

Under Tennessee law to establish a claim of abuse of process, a plaintiff must show: "'(1)

20

the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.'" *Givens v. Mulliken ex rel. Estate of McElwaney*, 75 S.W.3d 383, 400 (Tenn. Sup. Ct. 2002) (quoting *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. Sup. Ct. 1999)). Further, "[a]buse of process differs from malicious prosecution in that abuse of process lies 'for the improper use of process *after* it has been issued, not for maliciously causing process to issue.'" *Bell ex rel. Snyder*, 986 S.W.2d at 555. In addition:

> [t]he test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.

*Priest v. Union Agency*, 125 S.W.2d 142, 143-44 (Tenn. Sup. Ct. 1939) (quoting 1 AM. JUR., *Abuse of Process* § 6).

GKH urges that the continued filing and prosecution of claims even beyond this court's dismissal of the claims in the Bankruptcy Proceeding demonstrate a *prima facie* case of abuse of process. The court cannot find any action alleged in the Complaint that is outside the regular course of litigation. The breach of fiduciary duty and conflict of interest has previously been found by this court to be a legitimate legal issue. *See e.g.,* [Adv. Proc. No. 11-1121, Doc. No. 16, pp. 45, Doc. No. 14, pp. 13-38]; [Doc. No. 60, pp. 15-18].

The court has previously concluded that GKH failed to establish a *prima facie* case for its abuse of process claim against the Trustee, and there has been no new evidence regarding the debtor's conduct or motivation provided in support of the motion for default on this count. [Adv. Proc. No. 11-1121, Doc. No. 14, pp. 36-38]; [Adv. Proc. No. 11-1016, Doc. No. 68, pp. 19-25]. Even taking all of Bowers' allegations as true, he asks the court to find that the Debtor's filing of a

memorandum of authorities to enable the Chancellor to reach a decision on the defenses to the

motions to dismiss the Bradley County Lawsuit, and the further actions taken to dismiss the

remaining claims was an abuse of process. The court will not grant Bowers a default judgment on

the claim of abuse of process.

## C.    Appropriate Amount of Damages

Having found that Bowers is entitled to a default judgment on the basis of malicious

prosecution of the count of civil conspiracy, the court may consider what damages are appropriate.

In a suit for malicious prosecution, the elements recoverable are those damages which

"proximately result to the plaintiff, his person, property, or reputation from a previous

unsuccessful civil or criminal proceeding which was prosecuted without probable cause and with

malice." *Ryerson v. American Surety Co. of New York*, 373 S.W.2d 436, 437 (Tenn. Sup. Ct.

1963). Those expenses may include out of pocket expenses, such as attorney fees, the lost income

from missed work, and damage to reputation arising from publicity. *Pullen v. Textron*, 845 S.W.2d

777, 780 (Tenn. Ct. App. 1992). In this case, Bowers provided three declarations. First, Mr.

Norwood, who acted as counsel for Bowers in both proceedings, testified in his declaration that he

had charged Bowers $52,165.30 for representation in the Bradley County Lawsuit and $55,385.71

for representation in the Bankruptcy Proceeding. Motion for Default Judgment Hearing held Feb.

1, 2013, Ex. 1, Declaration of Jeffrey S. Norwood, Esq. ("Norwood Decl."),¶ 7. The invoices

attached to the declaration total in excess of $153,000. There are a number of entries redacted

which the court presumes account for the difference in the sum of the invoices and the total of the

amounts requested. The court does not find that the Debtor's involvement in the Bradley County

Lawsuit proximately caused the expenses which were incurred in the Bankruptcy Proceeding.

Only the Trustee brought the Bankruptcy Proceeding, and it would have had to have been

defended whether or not Mr. McKenzie had ever joined the Bradley County Lawsuit. Therefore,

the court will deny the request for compensatory damages arising from the legal fees incurred for

defense of the Bankruptcy Proceeding; however, to the extent that those itemized services reflect

work on the issue of property of the estate, the court recognizes that some of the work in the

Bankruptcy Proceeding was used in the defense of the claim of civil conspiracy to make a

fraudulent transfer or to violate the automatic stay. The court also recognizes that some of the work

on the Bradley County Lawsuit involved the breach of fiduciary duty claims for which the court

has denied Bowers' motion for default judgment. The time entries are not broken down task by

task, but a review of the entries leads the court to believe that allowance of the amount claimed for

the Bradley County Lawsuit is a fair approximation of the total of the damages attributable to the

malicious prosecution of the claim of civil conspiracy in the Bradley County Lawsuit plus the

research and drafting regarding the property of the estate in the Bankruptcy Proceeding. The court

finds that the Debtor's participation in the Bradley County Lawsuit proximately caused Bowers to

incur expenses of $52,165.30. *See* Billing Records of Husch Blackwell for 9/21/10 to 9/30/10

attached to Norwood Decl. Therefore, the court concludes that it will allow a total award of legal

fees of $52,165.30.

Bowers also seeks compensatory damages for his own time and expenses. He asserts that

he spent his own time in defending both the Bradley County Lawsuit and the Bankruptcy

Proceeding and that he "should receive reasonable compensation in an amount of no less than Fifty

Thousand Dollars ($50,000)." Bowers Decl., ¶ 8. However, Bowers does not provide the court

with any details regarding how he reached the number of $50,000. He does not separate his time

between the two proceedings, one of which was brought by someone other than the Debtor. The

court finds the request of $50,000 to be excessive based on the proof provided, and the court's

23

denial of a judgment based on the Bankruptcy Proceeding and two counts of the Bradley County

Lawsuit. Based on the court's rulings, a proportionate amount of compensatory damages awarded

on a judgment being granted on one third of one half of the litigation would be more in the vicinity

of $8000. The court will therefore award $8000 in compensatory damages for Bowers' time.

The last component of compensatory damages requested relates to reputational damages.

As noted *supra*, damages from a successful malicious prosecution claim can include damages to

reputation. *See Pullen*, 845 S.W.2d at 780. Bowers has submitted his own declaration, as well as

the Declaration of Vince Dooley in support of his damages for loss of reputation. Motion for

Default Judgment Hearing held Feb. 1, 2013, Ex. 2, Declaration of Vince Dooley ("Dooley

Decl."); Ex. 3, Declaration of Nelson E. Bowers, II ("Bowers Decl.").

Mr. Dooley is well-known and highly regarded nationally due to his service as a coach

and athletic director for the University of Georgia. His accomplishments in the areas of college

athletics, university development and philanthropic work are well-documented in his resume

attached to his declaration. Dooley Decl., Ex. 1. Bowers' declaration recites his varied business

interests, including numerous interests in automobile dealerships. Bowers Decl., ¶ 1, Ex. 1. The

evidence before the court, in the form of the Bowers' declaration and Mr. Dooley's declaration,

confirm that Bowers enjoys a highly favorable reputation for fairness, honesty, and integrity in the

greater southeastern community. His civic leadership and entrepreneurial activities are impressive

and undisputed.

Mr. Dooley's declaration notes that he has seen the "distress" the allegations made by the

Debtor have caused Bowers. Dooley Decl., ¶ 4. Mr. Dooley asserts his belief that Bowers has

suffered reputational damages in the amount of between one million and three million dollars.

Dooley Decl., ¶ 4. Bowers has requested reputational damages in the amount of $2,500,000.

24

Despite these significant claims, the court does not have any evidence before it of a single lost business opportunity or forfeited civic and leadership position that has occurred as a result of the prosecution of the Bradley County Lawsuit against Bowers. Neither Bowers nor Mr. Dooley alleges that Bowers has been asked to resign from the board of trustees of the University of Georgia, on which he serves, or any other charitable organization. Bowers does not reference any lost business opportunities, any default called based on a lender's insecurity, or any default raised based on any reputational or morals clauses in business agreements or franchises. There is not even any contention that the Debtor's claim prevented Bowers from proceeding with whatever plans he had to develop the real property transferred in December 2008.

Mr. Dooley does attach an internet article from the *Chattanooga Times Free Press* dated August 12, 2010 that describes the Bradley County Lawsuit and the Bankruptcy Proceeding as evidence of the longevity of bad publicity in this age of the internet and social media. Dooley Decl. ¶ 3, Ex. 2. He also states that he has had others ask him about the allegations of Bowers' involvement with the Debtor. *Id.* at ¶ 4. Although Mr. Dooley opines that Bowers' damages from loss of reputation may be in the range of one million to three million dollars, most of his declaration is a tribute to Bowers and the commendable manner in which he conducts himself and his business dealings. Dooley Decl., ¶ 4. Mr. Dooley notes that he has reviewed several studies showing the consequences to business owners where good reputations are challenged (Dooley Decl., ¶ 3), but he does not note any consequences other than his acquaintances who have become aware of these allegations and "attempted to discuss" them with him. Dooley Decl., ¶ 4.

The court recognizes that under Tennessee law, "malicious prosecution is analogous to libel or the kind of slander which is actionable without proof of damage and recovery of damages may be had without proof of actual harm to plaintiff's reputation, humiliation and other mental

suffering or injury to his feelings." *Odom v. Gray*, 508 S.W.2d 526, 532 (Tenn. Sup. Ct. 1974);

*Thompson v. Schulz*, 240 S.W.2d 252, 256 (Tenn. Ct. App. 1949). However, in the *Odom* and

*Thompson* cases, the award of damages for malicious prosecution was affirmed following a

resolution of the claim on the merits.

In the current proceeding, Bowers is obtaining a judgment against the Debtor by default in

a case that is a close call whether a judgment should be granted at all. The court has not discussed

the actual merits of Bowers' claim following a period of discovery and a trial. Further, courts in

Tennessee have refused to provide damages for loss of reputation of such tort claims as defamation

where a plaintiff has failed to demonstrate proof of damage to a reputation that is connected to the

defendant's alleged actions. *See e.g., Brasfield v. Dyer*, No. E2008-01774-COA-R3-CV, 2010 WL

98880, at *15 (Tenn. Ct. App. Jan. 12, 2010) (affirming trial court's judgment of no damages for

loss of reputation where plaintiff failed to demonstrate evidence she suffered damage to reputation

or that any alleged damage was caused by the defendants' defamatory statements). Although Mr.

Dooley has provided the court with his opinion relating to Bowers' possible damages for injury to

his reputation, there appears to be no evidence that Mr. Bowers' standing in the community has

actually been diminished. Moreover, Bowers has not provided the court with legal authority for

damage awards of more than one million dollars, especially in the absence of specific evidence of

damages suffered. *See Johnson v. Clark*, 484 F.Supp.2d 1242, 1257-58 (M.D. Fla. 2007)

(collecting cases reducing award of damages for loss of reputation and reducing jury's award of

damages for loss of reputation in the absence of evidence of economic damage). Therefore, the

court will deny Bowers' request for damages to Bowers' reputation.

### D.      Plaintiff's Request for Punitive Damages

Bowers' Complaint also requests punitive damages. *See* Complaint, p. 32. Tennessee law

allows for the award of punitive damages under certain egregious circumstances. In *Hodges v. S.C.
Toof & Co.* the Tennessee Supreme Court explained the circumstances under which an award of
punitive damages may be made:

> We agree with those States that have refined their laws to restrict the awarding of
> punitive damages to cases involving only the most egregious of wrongs. . . . In
> Tennessee, therefore, a court may henceforth award punitive damages only if it
> finds a defendant has acted either (1) intentionally, (2) fraudulently, (3)
> maliciously, or (4) recklessly.
>
> A person acts intentionally when it is the person's conscious objective or desire to
> engage in the conduct or cause the result. A person acts fraudulently when (1) the
> person intentionally misrepresents an existing, material fact or produces a false
> impression, in order to mislead another or to obtain an undue advantage, and (2)
> another is injured because of reasonable reliance upon that representation. A person
> acts maliciously when the person is motivated by ill will, hatred, or personal spite.
> A person acts recklessly when the person is aware of, but consciously disregards, a
> substantial and unjustifiable risk of such a nature that its disregard constitutes a
> gross deviation from the standard of care that an ordinary person would exercise
> under all the circumstances.

833 S.W.2d 896, 901 (Tenn. Sup. Ct. 1992) (citations omitted). A plaintiff must prove entitlement
to punitive damages by clear and convincing evidence. *Id.* Once the factfinder determines that the
plaintiff is entitled to punitive damages, the factfinder may consider nine different factors,
including the defendant's financial condition and net worth and the duration of the misconduct. *Id.*
at 901. In addition, the primary purpose of punitive damages is to "deter misconduct." *Id.* at 902.

The court concludes that Bowers' Complaint does not establish Bowers' entitlement to
punitive damages by clear and convincing evidence. Punitive damages are to be awarded only in
the most egregious of circumstances. The litigation lasted only a few months and the final claim
was dismissed within a month of the January 26 Order. Based on the allegations made in the
Complaint regarding the Debtor's conduct as it related to the participation in the Bradley County
Lawsuit, the court concludes that the Debtor's alleged conduct does not rise to the level sufficient

27

to award an amount of punitive damages. Even if Bowers had made a showing of entitlement to such damages, there is no evidence that the Debtor is capable of paying such a judgment. He is already indebted for millions of dollars to his creditors, including Bowers who has filed a claim in this case for over $2,400,000. [Bankr. Case No. 08-16378, Claim No. 118-1]. Therefore, the court finds that an additional award of damages against him that Bowers will never succeed in obtaining would be excessive.

### IV.    Conclusion

The court concludes that it will DENY Bowers' request for a default judgment with respect to his claim of malicious prosecution against the Debtor for prosecuting the Bankruptcy Proceeding and for prosecuting the claims of breach of fiduciary duty/conflict of interest, and assisting in a breach of fiduciary duty and conflict of interest in the Bradley County Lawsuit. The court will GRANT Bowers' request for a default judgment with respect to his claim of malicious prosecution against the Debtor for prosecuting the claim of civil conspiracy in the Bradley County Lawsuit. The court will grant Bowers a judgment in the amount of $52,165.30 for attorneys' fees and $8,000 for compensation for Bowers' time. The court will not award any damages for Bowers' claim of damages to his reputation. The total award of damages will be $60,165.30.

A separate judgment will enter.

# # #